IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL WIDMER, | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
| vs. | )   No. 13-cv-24-SCW |
| | ) |
| SAMUEL RAY SHEHORN, | ) |
| | ) |
|        Defendant. | ) |

## MEMORANDUM AND ORDER

**WILLIAMS, Magistrate Judge:**

Plaintiff, Michael Widmer, filed this lawsuit pursuant to 42 U.S.C. § 1983, for an alleged First Amendment retaliation claim while he was incarcerated at Lawrence Correctional Center ("Lawrence"). Before the Court is Defendant's Motion for Summary Judgment filed on October 31, 2014. (Docs. 48). Plaintiff filed a response to Defendant's Motion for Summary Judgment on January 5, 2015. (Doc. 52). Plaintiff also requested oral argument, but having reviewed the filings of the parties, the Court has determined that no oral argument is needed. (Doc. 53). Plaintiff's request for oral argument is therefore **DENIED**. (Doc. 53). The Court has carefully considered the briefs and all of the evidence submitted by the parties, and for the reasons set forth below, the motion is **GRANTED**.

### BACKGROUND

Plaintiff is a former inmate within the Illinois Department of Corrections ("IDOC"). The events giving rise to this lawsuit occurred while Plaintiff was incarcerated at Lawrence. From July 25, 2012 until September 12, 2012, Plaintiff went on a temporary court writ to Stateville. (Doc. 49-1, p. 6). During his time at Stateville, Plaintiff received a thirty day double-portion permit on September 7, 2012 and a thirty day low-bunk permit on September 11, 2012. (Doc. 49-5). On

September 12, 2012, Plaintiff returned to Lawrence and was housed in the segregation unit. (Doc. 49-1, p. 6). When Plaintiff returned to Lawrence, Defendant, Correctional Officer Samuel Shehorn, worked in the segregation unit where Plaintiff was housed. (Doc. 49-2, p. 38).

Plaintiff alleges that Defendant retaliated against him for filing grievances on two separate occasions. (Doc. 37, p. 6). The first alleged retaliation occurred on September 17, 2012 (Doc. 37 p. 4). Neither party has produced copies of any grievances Plaintiff filed against Defendant before the alleged September 17, 2012 retaliation. Additionally, Plaintiff did not state that he filed grievances against Defendant prior to September 17 in his original complaint. (Doc. 2. p. 7). The only evidence that Plaintiff filed grievances before the September 17, 2012 incident is Plaintiff's own testimony. (Doc. 49-1; p. 37). Plaintiff testified that he believed he filed a grievance against Defendant prior to the September 17, 2012 incident, but his testimony is based on the fact that he filed over a 100 grievances at Lawrence; he did not provide specifics on any grievances he filed against Defendant prior to September 17. (Doc. 49-1, p. 27). Defendant has no knowledge that Plaintiff filed any grievances against him prior to September 17, 2012. (Doc. 49-2, p. 18).

On that date, Defendant refused to honor his low-bunk permit that was issued at Stateville. (Doc. 37 p. 3-4). Defendant testified that his understanding was that he was not permitted to honor permits from other institutions, and that was standard operating procedure in segregation. (Doc. 49-2, p. 12). Defendant does not specifically recall this incident. (Doc. 49-2, p. 13). After Plaintiff reminded Defendant about his low-bunk permit, Plaintiff alleges that Defendant replied "I don't give a fuck what you have." (Doc. 37 p. 3-4.). Defendant denies cursing at inmates generally. (Doc. 49-2, p. 19). Shortly thereafter, Defendant called the crisis team after Plaintiff requested to speak with a crisis team member. (Doc. 49, p. 5) (Doc. 52, p. 14). When the crisis team member arrived, Plaintiff requested that he be allowed to speak to internal affairs since he wished to report a staff issue. (Doc. 49-1, p. 35). Plaintiff alleges that Defendant asked the crisis team member if they could

place Plaintiff in a strip cell. (Doc. 37, p. 4). The crisis team member agreed because Plaintiff did not want to speak to her. (Doc. 49-1, p. 35). The crisis team member then gave the order to place Plaintiff in a strip cell. (Doc. 49-1, p. 35). Defendant testified that social workers, not guards, make the determination of whether to place inmates in strip cells. (Doc. 49-2, p.14). Plaintiff remained in the strip cell until September 21, 2012. (Doc. 37). Defendant testified that C wing crisis watch team monitors strip cells and that he would not interact with inmates in strip cells as an A wing officer. (Doc. 49-2, p. 15-16).

On September 22, 2012, Plaintiff filed two grievances against Defendant in regards to the events the occurred on September 17, 2012. (Doc. 49-3). Plaintiff alleges that Defendant retaliated against Plaintiff for filing those grievances on October 1, 2012. (Doc. 37, p. 4). On that day, Defendant refused to honor Plaintiff's double-portion permit that was issued at Stateville. (Doc. 49, p. 4).

Defendant testified that if an inmate told him that he had a permit, that permit should be kept in the pod, in the middle of the segregation unit. (Doc. 49-2, p. 9). Defendant has submitted the affidavit of Major Sorenson, the Lieutenant who supervised the Segregation Unit in 2012, which corroborates this testimony about the proper procedure. According to Major Sorenson, a correctional officer will check the lieutenant's office to determine if the inmate does have a permit. (Doc. 49-6). There was also a board that reflected which inmates had which permits. (Doc. 49-2, p. 9). If the permit was not in the pod, Defendant's practice would be to then consult the relevant group, like health care. (Doc. 49-2, p. 9). Major Sorenson likewise corroborated that when the lieutenant's office does not have record of the permit, the correctional officer will contact the department responsible for issuing the permit. (Doc. 49-6).

Defendant, when shown Plaintiff's double-portion permit, testified that he would not have enforced that permit because it was not issued at Lawrence Correctional Center. (Doc. 49-2, p. 10-

11). He also testified that the permit was posted outside of Plaintiff's cell door on his ID holder, which is not where special permits were generally posted. (Doc. 49-2, p. 12). Defendant wrote a disciplinary ticket that reflects that he contacted health care and was told that Plaintiff did not have a double portions permit and had not seen the doctor since he returned. (Doc. 49-2, p. 12). Defendant issued Plaintiff a disciplinary ticket for forgery after learning the Health Care Unit did not have record of Plaintiff's double-portion permit (Doc. 49-4). Defendant testified that his decision to issue the ticket was made in part because portions of the permit were written in different ink and he thought Plaintiff may have added things to the permit. (Doc. 49-2, p. 12). The ticket was later expunged. (Doc. 52-6).

At the time of his deposition, Defendant reported that his understanding remained that he was not to enforce permits from other institutions. (Doc. 49-2, p. 14).

## DISCUSSION

### 1. Summary Judgment Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **Fed. R. Civ. P. 56(a)**. A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." **Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)**. In determining whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the nonmoving party. **Id. at 255**. The primary purpose of summary judgment is to identify and dispose of claims not supported by facts. **Albiero v. City of Kankakee, 246 F.3d 927, 932 (7th Cir. 2001)**. The nonmovant must respond, with affidavits or otherwise, stating the specific facts showing that there is a genuine issue for trial. **Id.** A nomovant will successfully oppose summary judgment only when it presents "definite, competent evidence to rebut the motion." **Id.**

### 2. First Amendment Retaliation

Plaintiff alleges that Defendant retaliated against him for filing several grievances against Defendant. (Doc. 37). A correctional officer may not retaliate against an inmate for filing a grievance. **DeWalt v. Carter, 224 F.3d 607, 618 (7th Cir. 2000)**. For Plaintiff to prevail on a First Amendment retaliation claim, he must prove: 1) that he engaged in activity protected by the First Amendment; 2) he suffered a deprivation that would likely to deter First Amendment activity; and 3) that the protected activity was at least a motivating factor behind the retaliation. **Bridges v. Gilbert, 557 F.3d 541, 547 (7th Cir. 2008)**. To determine whether Plaintiff suffered a deprivation that deterred First Amendment activity, the Court must consider whether the retaliation would lead an individual of ordinary firmness from exercising First Amendment activity in the future. **Id.** at 555.

In a First Amendment case, the burden of proof is split between the parties. **Mays v. Springborn, 719 F.3d 631, 634 (7th Cir. 2013)** (**citing Mt. Healthy Board of Education v. Doyle, 429 U.S. 274 (1977))**. First, Plaintiff must show that defendant's conduct was sufficient to cause the injury, that is, that the protected First Amendment conduct was a motivating factor for taking the retaliatory action. **Id. at 635.** The burden then shifts to defendant to rebut by showing that the action would have occurred anyway, regardless of the improper motive. **Id.** The inquiry is a question of fact. **Ustrak v. Fairman, 781 F.2d 573, 578 (7th Cir. 1986).** Evidence that shows that a prisoner did not violate the regulation can show retaliation. **Hale v. Scott, 371 F.3d 917, 920 (7th Cir. 2004)**.

The first alleged retaliation occurred on September 17, 2012. (Doc. 37, p. 4). Defendant is entitled to summary judgment because no reasonable jury could find that Defendant retaliated due to Plaintiff's protected First Amendment activity. Plaintiff has not provided any evidence that he engaged in protected activity other than his own testimony, which is based on Plaintiff's assumption that because he filed over 100 grievances while at Lawrence, he must have filed a grievance prior to

September 17 against Defendant. Plaintiff was able to submit several other grievances, along with detailed paperwork for them, but none of the grievances were filed prior to that date. Plaintiff has not provided any evidence about the subject of any grievance against Defendant or provided evidence on the date that he filed it. Defendant submitted evidence that he was not aware of any grievance filed against him prior to September 17, 2012. Plaintiff's vague testimony is not sufficient to create an issue of material fact on this point.

But even assuming that Plaintiff did engage in protected activity, his claim would still fail because Defendant has submitted sufficient evidence that he would have taken the action anyway, regardless of any improper motive. Plaintiff alleges that on September 17, 2012 Defendant retaliated against Plaintiff by failing to honor Plaintiff's low-bunk permit. (Doc. 37, p. 6). A correctional officer's decision not to honor an inmate's medical permits may deter that inmate from engaging in First Amendment activity. Plaintiff, however, cannot prove that Defendant refused to honor the low-bunk permit in retaliation for filing grievances. Defendant testified that he would not have honored the permit because it was not issued at Lawrence Correctional Center. He also testified that, if any inmate presented him with a permit from another institution, he would act in the same way as of the date of his deposition. His motive for refusing to honor the permit was that he thought that the Health Care Unit had not authorized the permit, not retaliation. Plaintiff has not submitted evidence that the Lawrence Health Care Unit ever had a record of his low bunk permit from Stateville, and it is undisputed that he had not been evaluated by health care since his return. A reasonable jury could not conclude on this record that the refusal to honor the low-bunk permit was retaliation.

Plaintiff next alleges that on September 17, 2012 Defendant forced Plaintiff to strip and live confined in a strip cell until September 22, 2012. (Doc. 37, p. 4). It is undisputed that Plaintiff asked Defendant to call a crisis team on his behalf. (Doc. 49, p. 5; Doc. 49-1; p. 34: 21-25, 35:1-12; Doc.

52, p. 14). Defendant submitted evidence that a crisis team member, not correctional officers, determine when to confine someone to a strip cell and the duration. (Doc. 49-2, pp. 58: 15-24, 59: 1-24, 60: 1-3). Defendant corroborated his testimony by providing the affidavit of Major Sorenson, who stated that only a crisis team member can order an inmate to be confined in a strip cell. (Doc. 49-6). Plaintiff has failed to produce any procedures, manuals of affidavits that state a correctional officer can order an inmate be placed in a strip cell. Plaintiff's own testimony reflects that a crisis team member ordered him placed in the cell. Although Defendant may have asked the crisis team member what they should do, it is clear that he did not order or demand any specific steps. Additionally, the evidence suggests that the crisis team member's actions were supported by other motivations. Plaintiff concedes that he asked for the crisis team to be called, but then refused to speak to the crisis team member until they called IA. The crisis team's options were limited at this point, and the record does not reflect that the decision to place Plaintiff in the crisis cell was unreasonable. Regardless, since Defendant did not make the order, it cannot be said that he retaliated against Plaintiff by placing him in a strip cell.

Plaintiff also alleges that Defendant cursed at him after Plaintiff reminded him about Plaintiff's low-bunk permit. (Doc. 37, p. 3-4). Defendant denies ever cursing at Plaintiff. (Doc. 49-2, p. 31, 75). Even assuming that he did so, the Constitution does not require correctional officers to address prisoners in "a civil tone using polite language." **Antoine v. Uchtman, 275 F. App'x. 539, 541 (7th Cir. 2008)**. A correctional officer's use of profane language alone is not enough to deter a reasonable person from participating in protected First Amendment activity. Additionally, the evidence shows that Plaintiff was not deterred from filing grievances. He filed several regarding this incident, and by his own testimony, had filed around 100 by the time he left Lawrence Correctional Center.

Plaintiff filed several grievances against Defendant, however, prior to the alleged retaliation that occurred on October 1, 2012 (Doc. 49-3). The grievances Plaintiff filed against Defendant prior to the October 1, 2012 incident were protected First Amendment activity. Plaintiff alleges that Defendant committed another act of retaliation when Defendant failed to honor Plaintiff's double-portion permit and issued a disciplinary ticket against Plaintiff. (Doc. 37, p. 6). There is no dispute that Defendant did not honor Plaintiff's double-portion permit and issued Plaintiff a disciplinary ticket for forgery. (Doc. 49, p. 4; Doc. 52, p. 13). However, like the earlier incident, Defendant has submitted evidence that he would have refused to honor the permit regardless of any improper motive. Defendant did not honor the permit because the characteristics of the permit looked suspicious. (Doc. 49-4). It had multiple ink colors on it, came from a different institution, and was found outside of Plaintiff's door instead of in the central pod.

More importantly, the Health Care Unit had no record of the double-portion permit. To determine the validity of the permit, Defendant contacted the Health Care Unit, who advised him that there was no record of Plaintiff's double-portion permit. (Doc. 49-4). Defendant followed the procedure described by Major Sorenson in determining the validity of Plaintiff's double-portion permit. Plaintiff has submitted no policy procedures, manuals or affidavits to suggest that Defendant did not follow the policy in determining permit's validity. He also did not submit any evidence suggesting that the Health Care Unit did have a record of the permit. Even if Defendant had no retaliatory motive, the permit would not have been honored as neither the lieutenant's office nor the Health Care Unit had a record of Plaintiff's double-portion permit. Without Health Care's authorization, an inmate is not entitled to double portions. Defendant was reasonable in believing that Health Care had not authorized double portions here. On these facts, a reasonable jury could not assume that retaliation was the but-for cause of Defendant's refusal to accept Plaintiff's double portions permit.

For the reasons set above, the Motion for Summary Judgment filed by Defendant (Doc. 48) is **GRANTED**.  Plaintiff's case against Defendant is **DISMISSED with prejudice**.  On January 1, 2015, Plaintiff filed an unopposed Request for Oral Argument (Doc. 53).  Plaintiff's Request for Oral Argument is **DENIED**.

**IT IS SO ORDERED.**

DATED: April 20, 2015

/s/ *Stephen C. Williams*
**Stephen C. Williams**
United States Magistrate Judge